Argued November 30, 1938; reversed January 10, 1939; rehearing
denied February 15, 1939

# BROWN *v.* MEIER & FRANK CO.

(86 P. (2d) 79)

610

*John C. Veatch* and *John F. Reilly*, both of Portland (Joseph, Veatch & Bradshaw and Wilson & Reilly, all of Portland, on the brief), for appellant.

*Henry S. Westbrook*, of Portland (Walter E. Hempstead, Jr., of Portland, on the brief), for respondent.

BELT, J.   This is an action to recover damages for an alleged false imprisonment. From judgment in favor of the plaintiff for $2,000, the defendant appeals.

The material facts out of which this action arose are as follows:   The defendant, Meier & Frank Co., is a corporation which owns and operates a large department store in the city of Portland.   A fur coat valued in excess of $500 was stolen from the store on January

20, 1934. Charles Shearer, a brother of the plaintiff, was found in possession of the coat and arrested for the commission of the crime. When Shearer was tried on such charge the jury disagreed. While Shearer was in jail awaiting trial, information obtained from him led to the suspicion that the plaintiff was involved in the crime and that he was shielding his sister.

Mrs. Violet Craig, the house detective of Meier & Frank Co., and Louis Manciet, a police officer of the city of Portland, at about 3:30 in the afternoon of February 13, 1934, went to a drug store, where plaintiff was employed at the fountain and lunch counter, to interview her concerning the theft of the coat. Plaintiff says that the police officer flashed his star, took her by the arm, and told her she was under arrest. It was almost quitting time for plaintiff and she said in effect that, after she changed her clothes, to avoid embarrassment she went with Manciet and Mrs. Craig into the street to talk the matter over. Plaintiff testified in substance that she was forced against her will to get into an automobile parked near by, where she was mistreated and accused of having stolen the coat but that she at all times denied the theft. Manciet and Mrs. Craig denied having mistreated the plaintiff and assert that she willingly got into the automobile and while there, in answer to their questioning, confessed that she was guilty of stealing the coat. Manciet said it was after the confession that the arrest, without a warrant, was made. Plaintiff says that, after her arrest, she was taken without her consent and against her will to the office of the superintendent of the Meier & Frank Co. store where, for a period of two hours, she was questioned and accused of the theft of the coat. Testimony offered on behalf of the defendant was to the effect that plaintiff requested that she be taken

to the store where she wanted the opportunity of "straightening the matter out," and that while in such office she again confessed to the crime for which she was arrested.

After being interviewed in the office of the superintendent, the plaintiff was taken to the police station and kept there, as she says, until 10:30 p. m., at which time she was released under bail. On the following day a hearing was had and plaintiff was bound over to await the action of the grand jury. The grand jury returned a not true bill.

The appellant's assignments of error pertain to the instructions of the court which, it is asserted, are inconsistent and contradictory. Defendant contends that, in view of the fact that plaintiff was bound over to the grand jury, there was probable cause for the arrest and that no action for false imprisonment could be based thereon. Defendant also asserts that the alleged wrongful detention of the plaintiff should be confined solely to the length of time she was detained at the store, in the event she was taken there against her will and without her consent.

Plaintiff asserts that no exception was taken to any of the instructions and hence the questions urged by appellant are not here for review. It is further contended by plaintiff that the instructions in any event were not prejudicial to defendant and that the issues were fully and fairly presented to the jury. Plaintiff also argues that, since the answer of the defendant was a general denial to the complaint, defendant is in no position to justify the arrest on the ground of probable cause for believing that she had committed the crime.

■ In our opinion, the question as to whether the instructions of the court in certain particulars were

inconsistent and contradictory is properly here for review. At the conclusion of the instructions the court asked: "Now is there anything else in particular that counsel want?" whereupon counsel for defendant said:

"There is only this in connection with the instructions, Your Honor, that I think might be confusing. You have instructed the jury that the fact that the plaintiff in this case was bound over to the grand jury makes the arrest lawful. Then further in your instructions you have instructed the jury that if they found that she was unlawfully arrested, or that if she lost her position by reason of the arrest which they believed to be unlawful that she would be entitled to damages. I think that under your instructions the only thing that the jury could consider would be whatever she suffered by reason of being taken to the Meier & Frank Company, depending upon whether or not they believed that she was taken there against her will or whether at her request or with her consent. I call that to your attention as it might be confusing in the minds of the jury, whatever damages might have been caused by the initial arrest, when that was a lawful proceeding."

After this exception by counsel, the court further instructed the jury as follows:

"Of course, if the jury should find in this case that the arrest was lawful, as the Court has instructed the jury the fact that the plaintiff was bound over would show that there was probable cause for her arrest, then the only other question the jury could consider is whether or not she was taken against her will and without her consent to Meier & Frank Company. If she was taken against her will and without her consent to Meier & Frank Company, why, she would have a right to recover some damages for that purpose. Is that clear?"

Later the court asked counsel, "Have you any exceptions?" and, in answer thereto, counsel for de-

614

fendant said, "Other than the one I called your attention to, that is all."

We think the above exception, when taken into consideration with the contention of the defendant made throughout the course of the trial, sufficiently pointed out to the court the particular part of the charge asserted to be erroneous and that, if error was committed, the trial court was given a fair opportunity to correct it. We agree, however, with respondent that the exception taken does not bring here for review the entire charge of the court and our attention will be directed only to the particular part mentioned by counsel in taking his exception.

Before considering the instructions claimed to be contradictory and inconsistent and which, it is asserted, were prejudicial to the defendant, it is well at this juncture to state some of the legal principles applicable to the facts in the case.

Since no justification for the arrest was pleaded, the sole issue under the pleadings was whether the plaintiff had been unlawfully restrained of her liberty or falsely imprisoned and, if so, the amount of damages sustained by her as the direct and proximate result thereof: *Joseph v. Meier & Frank Co.*, 120 Or. 117, 250 P. 739. Under the pleadings, as said in the above case, "the motive of the defendant or that it had probable cause for believing that plaintiff had stolen the bar pin (in this case a coat) were matters which could only be taken into consideration in mitigation of damages." Justification must be specially pleaded and it is not available under the general issue.

In plaintiff's case in chief it was necessary only for her to show a false imprisonment. After that was done the law presumes it unlawful until the contrary is shown. It was not necessary for plaintiff to allege

or prove that the imprisonment was without probable cause. See *Southern Ry. v. Shirley,* 121 Ky. 863, 90 S. W. 597, 12 Ann. Cas. 33 and, following the case, exhaustive notes on the subject, all of which are in keeping with the rule announced in *Joseph v. Meier & Frank Co.,* supra.

▮ In the instant case, however, plaintiff was not content to rely upon the presumptions resulting from a showing of imprisonment, but went further in her case in chief and introduced evidence of being bound over to the grand jury. The legal effect of this evidence was to overcome the presumption of her unlawful detention in the first instance under the arrest—as being bound over to the grand jury showed probable cause for the arrest. The precise question under consideration arose in *Smith v. Clark,* 37 Utah 116, 106 P. 653, 26 L. R. A. (N. S.) 953, Ann. Cas. 1912B, 1366, and the court, after discussing the essential elements of a prima facie case of false imprisonment and the presumptions that arise after a detention or imprisonment without a warrant, said:

"When, however, the plaintiff by his own evidence shows that he was detained or imprisoned as the result of judicial proceedings, and by the issuance and execution of a warrant or other legal process issued thereon, he is required, in order to make a prima facie case of false imprisonment, to show something more than a mere detention or imprisonment."

Certainly the defendant has the right to rely on the legal effect of evidence produced by the plaintiff herself. It is a well established rule, for which no authorities need be cited, that a person may be arrested for a felony without a warrant where there is reasonable ground for believing that such person has committed the offense.

We think then we may assume that the arrest of the plaintiff was a lawful one and that she has no cause to complain of her detention by reason thereof, unless the alleged subsequent misconduct of the defendant made it a trespasser ab initio—a subject that will be hereafter considered.

After the plaintiff was arrested, it was the plain statutory duty of the officer Manciet to take his prisoner before a magistrate "without delay" unless the plaintiff waived her right to have him do so: § 13-2021, Oregon Code 1930; *Bowles v. Creason,* 159 Or. 129, 78 P. (2d) 324. An officer cannot justify the detention of a prisoner for an unreasonable length of time without a warrant on the ground that time is necessary to investigate the case and procure evidence against the person under arrest: 4 American Jurisprudence, p. 49, § 70, citing numerous authorities. It is not the business of an officer making an arrest to take a prisoner against his will and without his consent before some self-constituted inquisitorial body and, if he does so, all who participate in such unlawful detention are liable in damages. What constitutes an unreasonable delay is ordinarily a question for the jury under all the facts and circumstances of the case. Of course, if the delay is occasioned by the person under arrest, no claim of unlawful detention or imprisonment can be based thereon: *Bowles v. Creason,* supra; 4 American Jurisprudence, p. 83, § 133. Hence, in the instant case one of the vital issues was whether the plaintiff was taken to the office of the superintendent of the defendant against her will and without her consent.

Since the arrest in its inception was lawful, it follows that if plaintiff was taken to the office of the defendant with her consent and approval, the ver-

dict should be for the defendant as there would be no unlawful restraint or detention involved. If, however, after the expiration of a reasonable length of time for bringing her before a committing magistrate, she was taken to such office against her will, the plaintiff would be entitled to recover damages resulting from such wrongful act.

Assuming that there was an unlawful detention of the plaintiff in that the officer did not, within a reasonable time, bring her before a magistrate and that, against her will, she was taken to the Meier & Frank office, does it follow that the defendant was a trespasser ab initio? This interesting question is res integra in this jurisdiction. It is one over which the authorities in other jurisdictions are in conflict: 25 C. J. 492. Some courts have expanded this ancient legal fiction to cases where the arrest, although legal in its inception, became unlawful by reason of subsequent wrongful conduct of the officer making the arrest. We think the better-reasoned cases are against the application of the doctrine to facts similar to those involved herein. If, in the instant case. the arrest was made not in good faith but for the purpose of accomplishing some subsequent wrongful act, there would be good reason to say that the arrest was not justifiable and that the officer making it became a trespasser ab initio. There is no evidence here, however, from which a reasonable inference could be drawn that the defendant in the first instance was not acting in good faith in the administration of justice. There is nothing to indicate that the arrest was made to shield the perpetration of some subsequent unlawful restraint of the person arrested. In *Friesenhan v. Maines,* 137 Mich. 10, 100 N. W. 172, the plaintiff contended that, although the arrest was legal, the unlaw-

ful detention made defendant a trespasser ab initio, but the court said:

"The rule invoked has no application to this case. That rule is applied to cases where the legal arrest is used as a cover to subsequent illegal conduct. There is no evidence in this case even tending to show that the arrest was made with any intent to detain plaintiff an unreasonable time, or to do him any other wrong. In such case the legality of the arrest is not tainted by the subsequent illegal detention. Taylor v. Jones, 42 N. H. 25; Page v. De Puy, 40 Ill. 506; Griel v. Hunter, 40 Ala. 542."

Also, to the same effect, see: *Stromberg v. Hansen,* 177 Minn. 307, 225 N. W. 148; *Atchison etc. R. Co. v. Hinsdell,* 76 Kan. 74, 90 P. 800, 12 L. R. A. (N. S.) 94, 13 Ann. Cas. 981; *Keefe v. Hart,* 213 Mass. 476, 100 N. E. 558, Ann. Cas. 1914A, 716; *Smith v. Bryson,* (Tex.), 33 S. W. (2d) 268; *Oxford v. Berry,* 204 Mich. 197, 170 N. W. 83; *Torson v. Baehni,* 134 Kan. 188, 5 P. (2d) 813; 28 Columbia Law Review, 841; 13 Chicago-Kent Review 268.

■ Having thus stated what we consider the true legal principles applicable to the facts, let us now turn to the instructions. The trial court clearly and accurately instructed:

"As the arrest in this particular case in the first instance was lawful, you are instructed that it is immaterial whether or not the plaintiff in this case was convicted or acquitted on the final trial of the cause, and you will not consider this matter in passing upon this case, and if you find that the plaintiff in this case was taken to Meier & Frank's office at her own request, or with her own consent, then there could be no false imprisonment for delay in taking her before a magistrate, and your verdict must then necessarily be for the defendant."

Prior to giving the above instruction the court, however, instructed the jury that "although an arrest might have been lawful in the first instance it might become unlawful by the failure of the arresting officer to take the person arrested before a magistrate within a reasonable time." This instruction involving, as it does, the doctrine of trespass ab initio cannot be reconciled with the instruction that the arrest was lawful and it is contrary to the legal conclusion which we have reached, although it must be conceded that it has the numerical support of the authorities. In the closing paragraph of the court's instructions, the question whether the arrest was lawful was left for the jury to determine. In our opinion, the court should have declared as a matter of law that the arrest was lawful.

█ That the defendant was substantially prejudiced by these contradictory instructions is plain. The defendant was entitled to have the jury, in its deliberations, confined to the alleged unlawful detention by reason of having been taken to Meier & Frank's store. However, the instructions permitted the jury to assess damages both by reason of her alleged unlawful detention at the Meier & Frank store and also on account of her detention by reason of her arrest. The court also specifically instructed that if she lost her "position of employment" as a result of her arrest she would be entitled to damages. We think that any damages resulting from the arrest in the first instance should have been excluded from the consideration of the jury. The vital issue was whether the plaintiff went to such place willingly or without her consent. If the plaintiff prevailed on this issue she would be limited to damages which are the direct and proximate result of such

wrongful restraint of her liberty. Damages could not be based on the detention by reason of the lawful arrest.

■ There are other assignments of error concerning the instructions but, since no exceptions were taken thereto, we pass them without comment. They are not here for review.

The judgment is reversed and the cause remanded for a new trial.

BEAN, ROSSMAN and KELLY, JJ., concur.